UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ANDREA VALIENTE,<br><br>Plaintiff,<br><br>v.<br><br>SIMPSON IMPORTS, LTD.,<br><br>Defendant. | Case No.  23-cv-02214-AMO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND, GRANTING REQUEST FOR JUDICIAL NOTICE**<br><br>Re:  Dkt. Nos. 14, 15 |

In this case about Simpson Imports, Ltd.'s canned tomatoes, Simpson moves to dismiss Andrea Valiente's class action complaint.  Valiente opposes.  Having considered the parties' papers, the relevant legal authority, and the arguments advanced by counsel during the hearing on the motion, the Court GRANTS the motion IN PART WITH LEAVE TO AMEND and DENIES the motion IN PART, for the reasons set forth below.

## I.    BACKGROUND

### A.    Factual Background[1]

San Marzano tomatoes "originate[] from the town of San Marzano sul Sarno, near Naples, Italy."  ECF 1 at 8-33 (Compl.) ¶ 8.  The tomatoes were "first grown in the volcanic soil around Mount Vesuvius" and some are still grown near the volcano.  *Id.* ¶¶ 8-9.  These San Marzano tomatoes "bear a special designation:  D.O.P. (*Denominazione d'Origine Protetta*, 'Protected Designation of Origin')."  *Id.* ¶ 9.  San Marzano tomatoes grown in the United States do not have the D.O.P. designation but are labeled "San Marzano style" or "San Marzano" without the D.O.P.

---

[1] The factual background is taken from the allegations in Valiente's complaint, which the Court takes as true for the purpose of the instant motion.  *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

United States District Court<br>Northern District of California

designation.  *Id.* ¶ 10.

San Marzano tomatoes are thinner and more pointed than a Roma tomato.  *Id.* ¶ 11.  Their flesh is also thicker with fewer seeds and has a stronger, sweeter, less acidic taste.  *Id.*  Because of these characteristics, San Marzano tomatoes "are perfectly suited for making sauces" and "are widely considered the best tomato in the world for the task."  *Id.* ¶ 12.  "[C]hefs and home cooks alike seek out canned San Marzano tomatoes and are willing to pay for them."  *Id.* ¶ 15.  These tomatoes "command double or triple the asking price of regular canned Roma tomatoes or generic tomatoes."  *Id.* ¶ 15.  An example price comparison is shown below:

| PRODUCT | PRICE |
| --- | --- |
| Signature SELECT Tomatoes Peeled Whole – 28oz | $2.59 |
| Hunt's Crushed Tomatoes – 28oz | $3.29 |
| Take Root Organics Whole Tomatoes – 28oz | $3.79 |
| SMT Whole Peeled Tomatoes – 28oz | $5.99 |
| Italbrand Tomatoes Peeled Italian San Marzano D.O.P. – 28oz | $5.99 |
| Cento Tomatoes San Marzano D.O.P. – 28oz | $8.99 |

*Id.* ¶ 16.

Simpson used to sell San Marzano tomatoes under the label shown below:[2]



---

[2] At the hearing, Simpson indicated that it last sold this product nine years ago.

United States District Court
Northern District of California

1   *Id.* ¶¶ 25-26.

2   Simpson now sells a variety of Roma tomato products under the "San Merican Tomato" or

3   "SMT" brand using a nearly identical label, shown below:



4
5
6
7
8
9
10
11
12
13
14

15   *Id.* ¶¶ 1, 18, 20, 29, 34 & n.1.  On the label, embedded within the letters corresponding to

16   Simpson's brand is text:  "San" for "S," "erican" is nested within the letter "M," and "omato"

17   appears under "T."  *Id.* ¶¶ 20-21, 28.  The text is "so comically miniscule that it is almost

18   impossible to see with the naked eye."  *Id.* ¶ 28.  The label also features illustrations of a San

19   Marzano tomato, which Simpson no longer sells.[3]  *Id.* ¶¶ 20-21, 26.  "[S]ubject to minor and

20   inconsequential variation," all of Simpson's tomato products, including boxed tomatoes, canned

21   tomatoes, tomato sauces, and tomato pastes, "are all packaged with the same visually distinct and

22   eye-catching label."  *Id.* ¶¶ 1, 20 & n.1.

23   Valiente prefers to use San Marzano tomatoes when cooking and making sauces at home.

24   *Id.* ¶ 40.  She purchased Simpson's whole peeled tomato product because (1) "she was under the

25   impression that the illustration on the front of the can was of a San Marzano tomato," (2) she

26   "understood the SMT abbreviation to mean 'San Marzano Tomato,'" and (3) she considered "the

27   ───────────────

28   [3] Simpson explains that the image of the tomato bearing the letters SMT is its trademarked logo.
ECF 14 (Mot.) at 14.

United States District Court
Northern District of California

price of the [p]roduct[] . . .  in line with what she expected genuine San Marzano style tomatoes to cost." *Id.*  Valiente would not have purchased Simpson's tomatoes, or would have paid less for them, if she had known that they were regular Roma tomatoes and not San Marzano tomatoes.  *Id.* She alleges that Simpson's product labeling is false and misleading, designed to give consumers the impression that Simpson's tomato products are San Marzano tomatoes when they are not.  *Id.* ¶¶ 23-34.

### B.    Procedural Background

Valiente filed her class action complaint in Santa Clara Superior Court on February 8, 2023.  Compl. at 1.  She asserts claims for (1) violation of all three prongs of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* (the "UCL"), (2) violation of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* (the "CLRA"), (3) violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* (the "FAL"), (4) fraud, (5) breach of express warranty, and (6) "unjust enrichment/restitution."  *Id.* ¶¶ 51-60, ¶¶ 61-71, ¶¶ 72-81, ¶¶ 82-88, ¶¶ 89-95, ¶¶ 96-106.  Valiente seeks to represent a class of: "all persons in California who purchased the Tomatoes" other than for resale.  *Id.* ¶ 45. Valiente defines "Tomatoes" as including all "SMT brand canned tomatoes," including but "not limited to, SMT brand crushed, diced, whole peeled, or pureed tomatoes," whether in a can or a box.  *Id.* ¶ 1 n.1.

Simpson removed the action to this Court on May 5, 2023.  ECF 1 (Notice of Removal). Simpson then moved to dismiss the complaint on June 7, 2023, seeking judicial notice of the product label for its whole peeled tomato product that has been in use since February 2019.  ECF 14 (Mot.), ECF 15 (RJN).  Valiente opposed the motion to dismiss on June 30, 2023, with no response to the request for judicial notice.  ECF 19 (Opp.).  Simpson's reply followed on July 31, 2023.  ECF 24 (Reply).  The Court held a hearing on the motion on January 25, 2024.  ECF 33.

## II.    LEGAL STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Federal Rule of Civil Procedure 8 requires a complaint to include "a short and plain

United States District Court
Northern District of California

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).

To overcome a motion to dismiss brought under Rule 12(b)(6), the factual allegations in the plaintiff's complaint "'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013) (alterations in original)).  In ruling on the motion, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031.

"[A]llegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).  The court may dismiss a claim "where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim." *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011) (citing *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008)).  "[T]he non-conclusory 'factual content' and reasonable inferences from that content must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  However, the court may consider material submitted as part of the complaint or relied upon in the complaint and may also consider material subject to judicial notice.  *See Lee v. City of Los Angeles,* 250 F.3d 668, 688-89 (9th Cir. 2001).  The Court, however, is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1082 (N.D. Cal. 2017).

## III.    DISCUSSION

### A.    Request for Judicial Notice

Before turning to the Motion to Dismiss, the Court first takes up Simpson's request for

United States District Court
Northern District of California

United States District Court
Northern District of California

judicial notice.  A district court may take judicial notice of facts that are "not subject to reasonable dispute" because they are (1) "generally known within the trial court's territorial jurisdiction," or (2) are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993).  The sole document subject to a request for judicial notice is the product label for Simpson's canned whole peeled tomato product, which has been in use since February 2019. RJN, Ex. A; ECF 16 (Levi Declaration) ¶ 3.  Valiente did not respond to the request for judicial notice.  Because there is no dispute as to the label's authenticity, the Court takes judicial notice of the label.  *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1086-87 (N.D. Cal. 2017) (citing *Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1098-99 (S.D. Cal. 2015)) (taking judicial notice of an image of Raisin Bran packaging).

In addition to the product label, the parties cite to internet articles, websites, screenshots, and other materials throughout their papers.  *See, e.g.*, Mot. at 14 nn.1-2, 16 nn.4-6, Opp. at 14 nn.5-6, 25 n.9.  Neither party has sought judicial notice of these materials or otherwise proffered a basis upon which this Court can properly consider them.  Accordingly, the Court has not considered these additional materials in ruling on the pending motion, to which the Court now turns.

### B.    Motion to Dismiss

Simpson moves to dismiss the complaint on nine grounds.  First, Simpson argues that the Federal Food, Drug, and Cosmetic Act ("FDCA") expressly preempts Valiente's claims.  Mot. at 18-20.  Second, Simpson argues that Valiente's California UCL, CLRA, and FAL claims are implausible.  *Id.* at 20-25.  Third, Simpson argues that Valiente fails to plead her fraud claims with the requisite specificity.  *Id.* at 25-27.  Fourth, Simpson argues that Valiente's breach of express warranty claim fails for lack of an actionable statement, promise or description.  *Id.* at 27-28. Fifth, Simpson argues that Valiente's fraud claim fails because Valiente does not allege an actual misrepresentation or plead scienter or intent.  *Id* at 28.  Sixth, Simpson argues that Valiente lacks standing to pursue injunctive relief.  *Id.* at 29-30.  Seventh, Simpson argues that Valiente's equitable claims for restitution fail because Valiente seeks damages and thus cannot allege that she

1     lacks an adequate remedy at law.  *Id.* at 30-31.  Eighth, Simpson argues that Valiente lacks

2     standing to pursue claims based on products that she did not purchase.  *Id.* at 31-33.  Ninth,

3     Simpson seeks dismissal of the class allegations or alternatively asks that the allegations be

4     stricken because they are not tethered to any applicable statute of limitations.  *Id.* at 33-34.

5            The Court first addresses the threshold issue of standing before assessing Simpson's

6     remaining arguments.

7                        **1.     Whether Valiente may assert claims concerning products she did not**
                                  **purchase.**
8

9            Article III standing requires a showing of an injury in fact that is traceable to the

10     challenged conduct and redressable by a favorable ruling.  *See Spokeo, Inc. v. Robins*, 578 U.S.

11     338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  In the Ninth

12     Circuit, "[t]here is no controlling authority on whether Plaintiffs have standing for products they

13     did not purchase."  *See Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal.

14     2012) (citing *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 921-22 (N.D. Cal. 2012) (collecting

15     cases)).  However, "[t]he majority of the courts that have carefully analyzed the question hold that

16     a plaintiff may have standing to assert claims for unnamed class members based on products he or

17     she did not purchase so long as the products and alleged misrepresentations are substantially

18     similar."  *Id.* at 869.

19            Courts have found substantial similarity across diverse products that bear similar labels, as

20     "[t]he critical issue is whether the products are substantially similar with respect to the alleged

21     mislabeling."  *See Baum v. J-B Weld Co., LLC*, No. 19-cv-01718-EMC, 2019 WL 6841231, at *4

22     (N.D. Cal. Dec. 16, 2019) (concluding plaintiff had standing to bring claims based on 24 products

23     with similar packaging and/or mislabeling); *see also Bush v. Rust-Oleum Corp.*, No. 20-cv-03268-

24     LB, 2021 WL 24842, at *6 (N.D. Cal. Jan. 4, 2021) (holding plaintiff had standing to bring claims

25     based on 13 products he did not purchase because he alleged that the front-label representations

26     were substantially similar and alleged uniform misrepresentations across product lines); *Astiana v.*

27     *Dreyer's Grand Ice Cream, Inc.*, Nos. C-11-2910-EMC, C-11-3164-EMC, 2012 WL 2990766, at

28     *13 (N.D. Cal. July 20, 2012) (The fact that "the different ice creams may ultimately have

United States District Court
Northern District of California

different ingredients is not dispositive as [p]laintiffs are challenging the same basic mislabeling practice across different product flavors.").

Here, Simpson first argues that Valiente lacks standing to assert claims concerning products she did not purchase.[4]  Mot. at 31-32.  Simpson next contends that "[a]t the very least, plaintiffs seeking to sue for products they did not purchase must allege that the unpurchased products are so substantially similar to purchased products to satisfy Article III requirements."  *Id.* at 32-33.  On this point, Simpson asserts that Valiente's conclusory allegation – "that [b]y its actions, [Simpson] disseminated uniform advertising regarding its Products to and across California" – is not enough.  *Id.* at 32-33.

Valiente counters that Simpson's argument is premature and better raised at the class certification stage.  Opp. at 24.  Valiente also argues that Simpson's argument "rests on the incorrect assertion that [she] has not alleged substantial similarity between the product [she] purchased and other Simpson . . . products."  *Id.*

In connection with this argument, Valiente points to the following paragraphs in her complaint:[5]

> Paragraph 4:  As described in further detail below, the label used for all of Defendant's tomato Products bears several features which make it highly misleading.  As a result, consumers have purchased hundreds of thousands of Defendant's Products under the false, but reasonable, impression that they were purchasing a San Marzano varietal of tomato, when they were not.

---

[4] Presented in conjunction with this argument is Simpson's separate contention that dismissal is appropriate as to claims based on statements by third party retailers.  Mot. at 33.  Valiente clarifies in her opposition that she "does not seek to sue for claims that were made by third-party retailers at all.  Rather, [she] includes these claims in her complaint to highlight the deceptive nature of [Simpson's] labeling."  Opp. at 26.  Valiente shall incorporate this clarification into her first amended complaint.

[5] Attached to Valiente's opposition brief are screenshots that purportedly show "the substantial similarity of [Simpson's] labeling practices across the Products."  Opp. at 25; ECF 19-1.  The screenshots are not contained in the complaint and are not subject to a request for judicial notice.  As a result, the Court has not considered the screenshots in ruling on the instant motion.

United States District Court
Northern District of California

- Paragraph 19:  Defendant sells boxed tomatoes, canned tomatoes, tomato sauces, and tomato pastes.  Defendant's deceptive labeling is substantially similar across all of its Products.

- Paragraph 20:   Defendant's Tomatoes are all packaged with the same visually distinct and eye-catching label, an example of which is depicted below, subject to minor and inconsequential variation:



- Paragraph 21:  The label features large illustrations of a San Marzano varietal tomato against a white background, with a thin ribbon of text around the top and bottom stating what kind of tomato preparation is in the can (*i.e.*, whole, crushed, diced, pureed).  In the middle of each tomato illustration are the letters SMT.

Compl. ¶¶ 4-5, 19-21.

These allegations establish uniformity and consistency in Simpson's labeling of its tomato products and are thus sufficient to establish substantial similarity across the whole peeled tomato product that Valiente purchased[6] and other Simpson tomato products.  *See Roffman v. Rebbl, Inc.*, 653 F. Supp. 3d 723, 729 (N.D. Cal. 2023) (plaintiff had standing to bring claims based on products she did not purchase where she only included an image of one product at issue but alleged it was uniform and consistent across the defendant's different products).

Simpson's motion to dismiss for lack of standing is therefore denied.

//

---

[6] Simpson asserts that the label in Valiente's complaint is outdated and does not match the version of the label that's been in use since 2019.  *See* Mot. at 16 n.3.  Simpson thus questions whether Valiente actually purchased the product in 2022 as she claims.  *Id.*  During the oral argument, Valiente's counsel confirmed the accuracy of the allegation that Valiente purchased Simpson's whole canned peeled tomato product in 2022.  Should discovery prove otherwise, Simpson may seek appropriate relief.

### 2.     Whether the FDCA preempts Valiente's claims.

As amended by the Nutrition Labeling and Education Act ("NLEA"), the Food, Drug, and Cosmetic Act ("FDCA"), "expressly preempts all state statutes and law that directly or indirectly establish any requirement for the labeling of food that is not identical to the federal requirements set forth by statute and Food and Drug Administration (FDA) regulations." *Nacarino v. Kashi Co.*, 77 F.4th 1201, 1204 (9th Cir. 2023) (internal quotations, citations, and footnotes omitted); *see also Hawkins v. Kroger Co.*, 906 F.3d 763, 769 (9th Cir. 2018) ("The NLEA . . . provides that no state may directly or indirectly establish any requirement for the labeling of food that is not identical to the federal requirements.").

A state law requirement is not identical to federal requirements if it "directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food that . . . are not imposed by or contained in the FDCA or applicable federal regulation . . . or differ from those specifically imposed by or contained in the applicable provision of the FDCA or applicable federal regulation." *Hollins v. Walmart Inc.*, 67 F.4th 1011, 1016 (9th Cir. 2023) (citing 21 C.F.R. § 100.1(c)(4)) (internal quotations and modifications omitted). Therefore, "a state-law misbranding claim" that would allow "a state to impose requirements . . . different from those permitted under the FDCA . . . is preempted." *Id.* (citing *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 603 (9th Cir. 2018) (internal quotations omitted)).

Simpson characterizes Valiente's claims as imposing a disclosure requirement that the FDCA does not contain, i.e., a requirement that Simpson specify the tomato varietal the consumer is purchasing. Mot. at 19-20. Relying on this characterization, Simpson argues that the FDCA expressly preempts Valiente's claims because (a) the FDCA does not require Simpson to state the specific tomato varietal on the product label and instead only requires that Simpson state that the products are "tomatoes," which the label does, and (b) Simpson complies with the FDCA's requirement that the product label specify the county of origin, which is the United States. Mot. at 19.

Valiente counters that she does not challenge Simpson's representations that the products are "tomatoes" or that they are "Grown and Packed in the U.S.A." Opp. at 11. Rather, Valiente

takes issue with the additional content on the product label—the illustration of a San Marzano tomato, the letters "SMT," and the text "San Merican tomato"—none of which federal regulation requires.  *Id.*  It is these features that serve as the basis for Valiente's claims that Simpson's product labels are false and misleading.  *Id.*  As such, Valiente contends that her claims are consistent with the FDCA, not preempted by it.  *Id.*  In light of Valiente cabining her claims to concern only these features of Simpson's label, the Court agrees that the claims are not preempted.

On this point, the Ninth Circuit's decision in *Astiana v. Hain Celestial Group Inc.* is instructive.  783 F.3d 753 (9th Cir. 2015).  There, the plaintiffs brought mislabeling claims based on the defendant's use of "All Natural," "Pure Natural," and "Pure, Natural & Organic" on its personal care products.  *Id.* at 756.  In a second motion to dismiss, the defendant asked the district court to stay or dismiss the plaintiffs' complaint under the primary jurisdiction doctrine so that the parties could seek expert guidance from the FDA.  *Id.* at 756-57.  The district court granted the motion and dismissed the complaint.  *Id.* at 757.

On appeal, the defendant urged the Ninth Circuit to consider whether the FDCA expressly preempted the plaintiffs' claims.  *Id.* at 757.  Though the district court did not address the argument, the Ninth Circuit considered the "purely legal question" as "a threshold issue for resolution."  *Id.*  It concluded that the plaintiffs' claims were not preempted because they were "not asking [the manufacturer] to modify or enhance any aspect of its cosmetics labels that are required by federal law," but instead "claim[ed] deception as a result of advertising statements that contradicted the true ingredients listed on the FDA-mandated label."  *Id.* at 758 (citation omitted).

The Ninth Circuit highlighted that "FDA regulations do not require [the manufacturer] to label its product as 'All Natural' or 'Pure Natural.'"  *Id.*  It added:  "[i]f [the plaintiffs'] suit ultimately requires [the manufacturer] to remove these allegedly misleading advertising statements from its product labels, such a result does not run afoul of the FDCA, which prohibits 'requirement[s]' that are 'different from,' 'in addition to,' or 'not identical with' federal rules."  *Id.*  Thus, because no statute or regulation governed "the use of 'natural' on cosmetics labels," there was no basis for express preemption, and the plaintiffs' claims could proceed.  *Id.* at 759.

Despite Simpson's characterization of the operative claims, Valiente takes no issue with

the aspects of Simpson's labels necessary for compliance with FDA requirements.  *See* Opp. at 11 ("Plaintiff does not challenge, for example, that the Products are "tomatoes" or that they are 'Grown and Packed in the U.S.A.'").  Instead, like the plaintiffs in *Astiana*, Valiente challenges features on the label that go beyond these requirements, including the use of an illustration of a San Marzano tomato, the use of an abbreviation "SMT," and the text that reads "San Merican Tomato."  *See id.*  As in *Astiana*, if this suit requires Simpson to remove those features from its labels, there is no conflict with the FDCA and thus no basis for preemption.  Indeed, Simpson contends that the FDCA merely requires it to identify the product as "tomatoes" and specify where they come from.  *See* Mot. at 19.  Simpson claims it does both.  *Id.*  It can continue to do so even if Valiente prevails on her claims.

Simpson does not address *Astiana* and instead relies on inapposite Ninth Circuit authority.[7] *See* Mot. at 18-20, Reply at 6-7.  *Pardini v. Unilever United States Inc.* involved false advertising claims relating to the product "I Can't Believe It's Not Butter! Spray."  65 F.4th 1081, 1084-85 (9th Cir. 2023).  In that case, the plaintiffs' claims put FDA regulations about serving size and calorie content at issue, and the district court dismissed the claims on preemption grounds.  *Id.* at 1084.  On appeal, the plaintiffs argued that the manufacturer's serving size information was misleading because it did not reflect customary usage.  *Id.* at 1089.  The Ninth Circuit rejected the argument, as "the reference amount customarily consumed" is "a value established by the FDA." *Id.* at 1090.  The plaintiffs' claims would thus impose a food labeling requirement not identical to existing federal regulations, and as such, the claims were preempted.  *Id.* at 1091.[8]

Similarly, in *Hollins v. Walmart, Inc.*, the plaintiffs challenged Walmart's labeling of its "Spring Valley Glucosamine Sulfate" supplement as misleading because the product "contained

---

[7] Valiente also does not address the Ninth Circuit cases Simpson cites in its opening brief.  *See* Opp. at 10-11.

[8] Simpson also relies on *Degelmann v. Advanced Medical Optics, Inc.*, 659 F.3d 835 (9th Cir. 2011).  The Court has not considered that decision here because it has been vacated, and as a result, is no longer binding.  *See* 699 F.3d 1101 (9th Cir. 2012).  *See also Page v. King*, No. 20-17073, 2021 WL 4690953, at *2 n.3 (9th Cir. Oct. 7, 2021) ("[A] vacated opinion may still be persuasive, even if not binding.").

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  glucosamine hydrochloride, not glucosamine sulfate or glucosamine sulfate potassium chloride."

2  67 F.4th at 1013.  After an evidentiary hearing, the district court granted summary judgment in

3  favor of Walmart on preemption grounds.  *Id.*  The plaintiffs appealed.  *Id.*  The Ninth Circuit

4  determined that the plaintiffs' claims "would require the state to impose the rule that a blend of

5  glucosamine hydrochloride and potassium sulfate cannot be labeled glucosamine sulfate or

6  glucosamine sulfate potassium chloride."  *Id.* at 1018.  Such a rule would impose a labeling

7  requirement different than those set by the FDCA.  *Id.* at 1019.  Because of this, the Ninth Circuit

8  affirmed the district court's order, which properly found that the plaintiffs' claims were preempted

9  by the FDCA.  *Id.* at 1022.

10      Neither *Pardini* nor *Hollins* compel a finding that the FDCA preempts Valiente's claims

11  here.  As discussed above, Valiente expressly disclaims any attempt to impose labeling

12  requirements other than those set by federal law.  Instead, Valiente seeks to hold Simpson

13  accountable for adding content that, as alleged, is both (1) not required by federal regulations and

14  (2) misleading.  As such, Valiente's claims are not preempted.

15      Accordingly, Simpson's motion to dismiss on preemption grounds is denied.  In the event,

16  however, that Simpson moves to dismiss Valiente's forthcoming first amended complaint on

17  preemption grounds, the Court may revisit this ruling for two reasons.  First, Valiente's

18  representations about the nature of the claims in the complaint appear contradicted by some of the

19  arguments presently before the Court.  For example, during oral argument, Valiente indicated that

20  she is not asking that Simpson add anything to its product labels.  Simpson countered by pointing

21  to Valiente's demand for "an injunction requiring [Simpson] to disclose on its Products'

22  packaging that the Tomatoes are not San Marzano varietal tomatoes, but in fact are regular Roma

23  tomatoes[.]"  *See* Compl. ¶ 60.  Second, in her opposition brief, Valiente contends that her fraud

24  claim "plead[s] omissions in addition to . . . misrepresentations."  Opp. at 17.  The complaint

25  contains no allegations of specific omissions, and during oral argument, Valiente conceded that

26  this is a case about misrepresentations, not omissions.  To the extent Valiente's does not conform

27  her first amended complaint to the representations made by her counsel during oral argument, the

28  Court may depart from the ruling set forth above.

United States District Court
Northern District of California

13

### 3.    <u>Whether Valiente's CLRA, UCL, and FAL claims are plausible.</u>

In order to protect its citizens from unfair, deceptive, or fraudulent business practices, California has enacted a number of consumer protection statutes.  The CLRA prohibits "unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any customer."  Cal. Civ. Code § 1770(a).  Similarly, the UCL prohibits any "unlawful, unfair or fraudulent business act or practice," and the FAL prohibits any "unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code §§ 17200, 17500.

"Under the[se] consumer protection laws[,] . . . claims based on deceptive or misleading marketing must demonstrate that a 'reasonable consumer' is likely to be misled by the representation."  *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021).  "Under the reasonable consumer standard, [a plaintiff] must show that members of the public are likely to be deceived."  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  "The California Supreme Court has recognized that these laws prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."  *Id.* at 938 (internal quotation marks omitted) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)).  The reasonable consumer test requires more than a mere possibility that defendant's product "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).  Rather, the test requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Id.*; *see also Moore*, 4 F.4th at 881.

Generally, "whether a reasonable consumer would be deceived . . . [is] a question of fact not amenable to determination on a motion to dismiss."  *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014); *see Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015).  "However, in rare situations a court may determine, as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not plausible."  *Ham*, 70 F. Supp. 3d at 1193.

That rare situation is not present here.  Valiente bases her claims on three allegedly

14

misleading features of Simpson's product label:  the illustration of a San Marzano tomato, the letters "SMT," and the text "San Merican Tomato."[9]  *See* Compl. ¶¶ 24-29.  While Simpson offers an interpretation of the features on its label, its assertions do not control at this stage.  Simpson may be right in asserting that the illustration is subject to artistic interpretation and that the label makes clear that "SMT" stands for San Merican tomato.  But the Court must take Valiente's allegations about the label as true at this stage.

Crediting Valiente's allegations, and drawing all reasonable inferences in Valiente's favor, it is plausible that reasonable consumers would interpret the illustration and the letters SMT as Valiente did, and miss the imbedded "San Merican tomato" text, which would lead them to reasonably believe that Simpson's tomatoes are San Marzano tomatoes.  The price of Simpson's tomatoes further contributes to the plausibility of a consumer's expectation that Simpson's tomatoes are San Marzano tomatoes.  A 28 ounce can of Simpson's whole peeled tomatoes sells for $5.99, the same price as a 28 ounce can of a D.O.P. product by another seller – a price which incorporates a premium San Marzano tomatoes command.  *Cf. Moore*, 4 F.4th at 884-85 (allegations of false and misleading labeling failed as matter of law where defendant's Manuka honey product was priced substantially lower than other products with higher concentrations of Manuka flower nectar, and the product label disclosed a rating on the lower end of the purity scale).

Simpson's reliance on *Sibrian v. Cento Fine Foods, Inc.*, No. 19-CV-0974(JS)(ST), 2020 WL 3618953 (S.D.N.Y. July 2, 2020), is misplaced.  In that case, the plaintiffs alleged that the defendant's labeling and packaging created the impression that the tomatoes at issue were certified by "The Consortium of the San Marzano Tomato, PDO."  *Id.* at *1, *3.  The plaintiffs also alleged that Consortium-certified tomatoes bear two seals.  *Id.* at *4.  On defendant's motion, the court

_____

[9] Valiente also alleges that Simpson sells its products at San Marzano prices.  Compl. ¶¶ 16, 30. Simpson explains that it does not have control over the pricing set by retailers.  Mot. at 25.  In her opposition brief, Valiente clarifies that she "does not challenge representations made by third parties . . . [but] cites them because they highlight the proficiency of [Simpson's] deception."  Opp. at 16.

dismissed the claims with leave to amend. *Id.* The court found that while "some few consumers" would expect a San Marzano tomato to be certified by the Consortium, "the vast majority of consumers [would] expect no such thing." *Id.* The court also found it implausible that reasonable consumers would believe the Consortium certified defendant's tomatoes where the Consortium's seals did not appear on the products at issue. *Id.*

Unlike *Sibrian*, the basis of the alleged fraud is not some missing certification; it is the features on the Simpson's labels that could give reasonable consumers the impression that Simpson's products are San Marzano tomatoes when they are not.[10] It is plausible for reasonable consumers to view the letters "SMT" and the illustration on Simpson's label and expect a San Marzano tomato, particularly when they have paid a price that is comparable to other San Marzano tomatoes.

Also unlike *Sibrian*, Valiente alleges substantial facts supporting a plausible inference that consumers are aware of what San Marzano tomatoes are, actively seek them out, and are willing to pay a premium price for them. *See* Compl. ¶ 2 ("San Marzano tomatoes are a highly sought-after variety of tomato – generally considered the best for making sauces."); ¶ 11 ("Compared to the Roma tomato, San Marzano tomatoes are thinner and more pointed. The flesh is much thicker with fewer seeds, and a stronger, sweeter, less acidic taste."); ¶ 12 ("Indeed, they are widely considered the best tomato in the world for the task.); ¶ 15 ("[C]hefs and home cooks alike seek out canned San Marzano tomatoes and are willing to pay for them. San Marzano tomatoes routinely command double or triple the asking price of regular canned Roma or generic tomatoes.").

Accordingly, to the extent Simpson seeks dismissal of Valiente's UCL, FAL, and CLRA claims for lack of plausibility, its motion is denied. However, to the extent Valiente alleges that "she was under the impression that the illustration on the front of the can was of a San Marzano

---

[10] The case Valiente relies on—*Snarr v. Cento Fine Foods Inc.*, No. 19-CV-02627-HSG, 2019 WL 7050149 (N.D. Cal. Dec. 23, 2019)—likewise concerned certification and country of origin allegations that are not at issue here.

United States District Court
Northern District of California

tomato," that she "understood the SMT abbreviation to mean 'San Marzano Tomato,'" that the text "San Merican Tomato" was not visible to her, or that she would have interpreted San Merican tomato to mean a "San Marzano varietal tomato[] grown in North America," *see* Compl. ¶¶ 28, 29, 40, Valiente's counsel represented she can allege additional facts. For this reason, Simpson's motion to dismiss Valiente's consumer protection claims is granted in part so that Valiente may include these additional facts in her first amended complaint. The motion is otherwise denied as set forth above.

### 4. Whether Valiente adequately pleaded a fraud claim.

Simpson seeks dismissal of Valiente's fraud claim for two reasons. First, Simpson argues that Valiente fails to satisfy the heightened pleading requirements that apply to fraud claims. Mot. at 26-27. Second, Simpson argues that the claim lacks allegations of an actionable misrepresentation or scienter. *Id.* at 28-29. The Court addresses each argument below.

#### a. Rule 9(b)

For claims sounding in fraud or mistake, a plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this standard, the "complaint must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation and internal quotation marks omitted).

Simpson argues that Valiente fails to meet Rule 9(b) because she does not specify the size of the product she purchased or whether she purchased any other Simpson products, "including any products in a box as opposed to a can." Mot. at 26. Simpson also argues that Valiente fails to allege deception with the requisite specificity, because "she alleges only that she surmised from the labels" that Simpson's products "were 'genuine' San Marzano tomatoes" without explaining "how she came to such a conclusion." *Id.* at 27; Reply at 11. Simpson asserts that "there is no uniform definition for San Marzano tomatoes, reasonable consumers likely do not appreciate the visual distinctions between tomato varietals, and [its] [t]omato [p]roducts do not say 'San Marzano tomatoes.'" Mot. at 27; Reply at 11. Finally, Simpson argues that Valiente "does not

define what she means by a 'genuine' San Marzano tomato, does not explain whether she was looking for a domestic or imported tomato product, and does not explain why San Marzano tomatoes were important to her."  Mot. at 27; Reply at 11.

In her opposition, Valiente points to allegations identifying the who, what, when, where, and how.  The "who" is Simpson.  *See* Compl. ¶ 1.  The "what" is the features on Simpson's labels.  *See id.* ¶¶ 24-29.[11]  The "when" is 2022.  *See id.* ¶ 40.[12]  The "where" is the packaging, labeling, and marketing of Simpson's tomato products.  *See id.* ¶ 18-38.  The "how" is the use of an illustration of a San Marzano tomato, the lettering "SMT" that a reasonable consumer would understand as an abbreviation for "San Marzano tomato," and the text "San Merican Tomato" that a reasonable consumer would understand to mean "San Marzano varietal tomatoes grown in North America."  *See id.* ¶¶ 23-29.

These allegations are largely sufficient under Rule 9(b).  *See Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2011 WL 2111796, at *6 (N.D. Cal. May 26, 2011) (rejecting defendant's arguments that plaintiffs had failed to plausibly allege that a reasonable consumer would assume the words "all natural" to mean plaintiffs' interpretation and finding Rule 9(b) satisfied where plaintiffs alleged that, between 2006 and the class period, defendant's labels advertised its ice cream as "all natural" while omitting that it contained a synthetic ingredient).

However, the Court agrees that Valiente's allegations about how she reached certain conclusions about the label are lacking.  Because, as discussed in connection with the consumer protection claims, Valiente's counsel represented that there are additional facts she can allege, the Court will grant the motion to dismiss to allow Valiente the opportunity to incorporate those allegations in her first amended complaint.

---

[11] Some of the references to the complaint appear to be mis-numbered in Valiente's opposition brief.  The Court uses the paragraph numbers as they appear in the complaint.

[12] While Valiente references 2022 in connection with her purchase of Simpson tomatoes as alleged in the complaint, in her opposition, she apparently seeks to expand the "when" to include "the applicable limitations period."  *See* Opp. at 18.  Because no allegations about the applicable limitations period are contained in the complaint, the Court has not considered that additional timeframe in the Rule 9(b) analysis set forth above.

**b.      *Misrepresentation and scienter***

To state a claim for fraud, a plaintiff must allege:  (1) a misrepresentation or omission of a fact that should have been disclosed; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damages.  *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).

Simpson argues that Valiente fails to adequately plead two of these elements.  Mot. at 28-29.  First, Simpson argues that there is no misrepresentation because the product labels "fully comply with FDA regulations," "accurately describe the products as 'tomatoes,'" and bear Simpson's trademark, without any reference to San Marzano.  *Id.* at 28.  Second, Simpson argues that Valiente does not plead scienter or intent.  *Id.* at 28-29; Reply at 12.  Both of these arguments fail.

Simpson's assertions that its label complies with FDA regulations, accurately describes its products as tomatoes, and prominently displays its trademark are not grounds to dismiss Valiente's fraud claim.  The Court has already found that Valiente plausibly alleges that Simpson's labels could mislead a reasonable consumer by giving the impression that Simpson's SMT tomatoes are San Marzano tomatoes and that the consumer protection claims Valiente asserts are not preempted.  *See supra* Part III.B.2-3.  For the reasons explained in connection with that ruling, the Court rejects Simpson's argument that Valiente fails to plead an actionable misstatement.

The Court also rejects Simpson's argument that Valiente fails to adequately plead scienter or intent.  As Valiente points out in her opposition, she alleges that Simpson knows that the illustration on its labels "is of a San Marzano tomato because [Simpson] used to sell actual San Marzano varietal tomatoes, using nearly identical packaging.  The only difference was that [Simpson's] package used to have 'San Marzano' written where 'SMT' is now."  Opp. at 22; Compl. ¶ 25.  She also alleges that even though Simpson "no longer sells true San Marzano tomatoes, its packaging still bears the image of one."  Opp. at 22; Compl. ¶ 26.  As discussed above, though Simpson argues that the illustration is subject to interpretation, the Court must take Valiente's allegations as true and draw all inferences in her favor.  *See Moss*, 572 F.3d at 969.

United States District Court
Northern District of California

1    Accordingly, the Court finds that the allegations that Simpson (1) used to sell San Marzano

2    tomatoes, (2) maintained all aspects of the old label except replacing "San Marzano" with "SMT"

3    and adding "miniscule" text stating "San Merican Tomato," and (3) now sells Roma tomatoes

4    instead of San Marzano tomatoes under that nearly identical label sufficiently plead

5    misrepresentation and scienter.

6    The two cases Simpson cites in reply do not persuade otherwise.  In *Smith v. Apple, Inc.*, a

7    putative class action alleging that Apple misled consumers about the extent of the iPhone's

8    resistance to water exposure, the plaintiffs' complaint "contain[ed] only a conclusory assertion

9    that Apple acted with fraudulent intent" and "d[id] not plausibly allege that Apple knew its

10   iPhones were not as water resistant as advertised."  583 F. Supp. 3d 554, 568 (S.D.N.Y. 2022).  As

11   explained above, Valiente's allegations go well beyond those at issue in *Smith*.  Valiente alleges

12   that Simpson sells its Roma tomato products under the label it previously used for its San

13   Manzano tomato products, with very limited changes.  The limited changes – adding "SMT" and

14   illegible text stating "San Merican Tomato" – support a strong inference that Simpson intended to

15   make as few changes as possible to its product label to keep consumers under the impression that

16   its Roma tomato products were the same as the San Marzano tomatoes it previously sold.

17   The matter of *In re Cadence Design Systems, Inc. Securities Litigation* is also inapposite.

18   654 F. Supp. 2d 1037 (N.D. Cal. 2009).  Investors brought that action under the Private Securities

19   Litigation Reform Act.  *Id.* at 1044.  That statute imposes further heightened requirements for

20   pleading fraud.  This Court need not subject Valiente to them in this consumer fraud action.  To

21   the extent Simpson relies on the case solely for the proposition that "[c]onclusory allegations that

22   a defendant 'must have known' about particular wrongdoing are, standing alone, generally

23   insufficient," *see* Reply at 12, the Court has already explained why the allegations here are not

24   conclusory.

25   Simpson's motion to dismiss for lack of adequate allegations of a misrepresentation or

26   scienter is therefore denied.

27   //

28   //

20

United States District Court
Northern District of California

5.      **Whether Valiente's breach of express warranty claim fails for lack of an actual misrepresentation.**

To state a claim for breach of express warranty, plaintiff must establish three elements: "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) (internal quotation marks omitted).

Because "courts in this district regularly hold that stating a claim under California consumer protection statutes is sufficient to state a claim for express warranty," the Court denies Simpson's motion to dismiss Valiente's warranty claim for the reasons set forth earlier in this order. *See DiGiacinto v. RB Health (US) LLC*, 668 F. Supp. 3d 950, 966 (N.D. Cal. Apr. 11, 2023) (denying motion to dismiss express warranty claim where plaintiff had sufficiently alleged deception under the reasonable consumer standard); *cf. Kim v. Bluetriton Brands, Inc.*, No. 22-56063, 2024 WL 243343, at *2 (9th Cir. Jan. 23, 2024) (dismissing plaintiff's claims, including claim for breach of express warranty, where plaintiff failed to plead consumer deception).

6.      **Whether Valiente has standing to seek injunctive relief.**

"A plaintiff must demonstrate standing separately for each form of relief sought." *Duran v. Creek*, No. 3:15-CV-05497-LB, 2016 WL 1191685, at *6 (N.D. Cal. Mar. 28, 2016) (citing *Friends of the Earth, Inc. v. Laidlaw Envtly. Sys. (TOC), Inc.*, 528 U.S. 167, 185 (2000)). "To establish standing for injunctive relief in federal court, a plaintiff must demonstrate a sufficient likelihood that [they] will again be wronged in a similar way." *Id.* (internal quotations and citation omitted).

Simpson argues that Valiente now knows that Simpson's products are not San Marzano tomatoes, does not allege a desire to purchase Simpson tomatoes in the future, and as a result, cannot establish a risk of future harm necessary to sustain a claim for injunctive relief. Mot. at 29-30. Valiente does not address this argument in her opposition, perhaps because Simpson is correct that the complaint contains no allegation that there is a risk of future harm and that such an omission is grounds for dismissal of her claims. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d

956, 969-70 (9th Cir. 2018) ("In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to."); *see also Duran*, 2016 WL 1191685, at *7 (noting that "[e]ven where courts find standing, most require that the plaintiff plead intent to purchase the products in the future to establish a sufficient threat of future injury.").

Accordingly, Simpson's motion to dismiss is granted as to Valiente's claims for injunctive relief with leave to amend.

### 7. Whether Valiente can pursue equitable claims if she has an adequate remedy at law.

Simpson next argues that Valiente cannot pursue any equitable claims because she has an adequate remedy at law. Mot. at 30-31. Relying on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), and *Guzman v. Polaris Industries, Inc.*, 49 F.4th 1308 (9th Cir. 2022), Simpson contends that Ninth Circuit law clearly resolves this issue in its favor. Mot. at 30.

In *Sonner v. Premier Nutrition Corp.*, a mislabeling class action involving "Joint Juice," the plaintiff initially brought claims for equitable relief under the UCL and CLRA and for damages under the CLRA. 971 F.3d 834, 838 (9th Cir. 2020). On the eve of trial, after litigating the case for four years, the plaintiff dismissed her state law damages claim and elected to move forward only on the state law equitable claims for restitution and injunctive relief. *Id.* at 837. The district court then dismissed the restitution claims because an adequate remedy at law, i.e., damages, was available. *Id.* On appeal, the Ninth Circuit affirmed the dismissal because the plaintiff "fail[ed] to establish that she lack[ed] an adequate remedy at law" in the CLRA, holding that "a federal court must apply traditional equitable principles before awarding restitution under the UCL and CLRA." *Id.* at 841, 844.

In *Guzman*, also a mislabeling case, the district court granted summary judgment in favor of the defendants and dismissed the plaintiff's UCL claim with prejudice. 49 F.4th at 1310. The Ninth Circuit affirmed in part and reversed in part. *Id.* Based in part on *Sonner*, the Ninth Circuit affirmed the portion of the district court order dismissing the UCL claim. *Id.* at 1313. It agreed that the plaintiff had an adequate remedy at law through his CLRA claim for damages, even

1   though he could no longer pursue the claim because it was time-barred.  *Id.* at 1311, 1313.  As to

2   the portion of the district court's order that dismissed the UCL claim with prejudice, the Ninth

3   Circuit reversed with instructions to dismiss without prejudice for lack of equitable jurisdiction,

4   which would allow the plaintiff to re-file the claim in state court.  *Id.* at 1315.

5          Here, *Sonner* and *Guzman* do not mandate dismissal of Valiente's claims because the

6   decisions "require far less at the pleading stage."  *See In re Natera Prenatal Testing Litig.*, 664 F.

7   Supp. 3d 995, 1012 (N.D. Cal. Mar. 28, 2023).  Valiente alleges that she "may lack an adequate

8   remedy at law" if the amount of damages recoverable is less than the price premium she paid for

9   Simpson's tomatoes.  *See* Compl. ¶¶ 58, 105.  She also alleges that "[r]estitution and/or injunctive

10  relief may also be more certain, prompt, and efficient than other legal remedies . . . ."  *Id.* ¶¶ 60,

11  106.  These allegations are sufficient to survive the pending motion to dismiss.  *See Murphy v.*

12  *Olly Pub. Benefit Corp.*, 651 F. Supp. 3d 1111, 1129 (N.D. Cal. 2023) (declining to dismiss the

13  request for equitable relief where the plaintiffs alleged that legal remedies were not as certain as

14  equitable remedies because, for example, a full refund would require a showing that the product at

15  issue had no market value but no such showing was required for restitution).  *Cf. Roffman*, 653 F.

16  Supp. 3d at 731 (granting motion to dismiss and allowing plaintiff leave to amend her allegations

17  regarding the inadequacy of her legal remedies where the plaintiff "d[id] not suggest that she

18  s[ought] a different amount in damages than she d[id] in restitution" or that there was a limitation

19  inherent to the available legal remedy itself that would make it inadequate); *Bryan v. Apple*, No.

20  22-cv-00845-HSG, 2023 WL 2333893, at *3 (N.D. Cal. Mar. 2, 2023) (granting motion to dismiss

21  on a "narrow basis" where plaintiffs did not explain how their claims for damages and equitable

22  relief were based on different theories and did not allege that they lacked an adequate remedy at

23  law); *Smith v. Apple, Inc.*, No. 21-CV-09527-HSG, 2023 WL 2095914, at *3 (N.D. Cal. Feb. 17,

24  2023) (dismissing claims for equitable relief based on *Sonner* and *Guzman* where the plaintiffs

25  had "not adequately alleged that their remedies at law are inadequate" or "address[ed] why

26  monetary damages would be inadequate to make [p]laintiffs whole.").

27         For these reasons, Simpson's motion to dismiss Valiente's equitable claims is denied.

28  //

United States District Court
Northern District of California

23

1

2

3

4

**8.** <u>**Whether the class allegations should be dismissed or stricken**</u>.

Finally, Simpson argues that Valiente's class allegations should be dismissed, or in the alternative, stricken because the proposed class definition contains no time period, even though the longest applicable statute of limitations is four years.  Mot. at 33-34; Reply at 14.

5

6

7

8

9

10

Simpson is correct that Valiente's proposed class definition is untethered to any applicable statute of limitations.  *See* Compl. ¶ 45.  The definition includes "all persons in California who purchased the Tomatoes," except for anyone who purchased them for resale.  *Id.*  In her opposition, however, Valiente asserts that she "does not seek to assert claims outside of the limitations period."  Opp. at 26.  Despite this concession, Valiente asserts that she "is not even locked into her proposed class definition, which is subject to change as the case develops."  *Id.*

11

12

13

In light of Valiente's representation that she "does not seek to assert claims outside of the limitations period," the Court grants the motion to dismiss so that Valiente can conform her proposed class definition to her counsel's representation.

14

15

16

17

18

19

20

The only case Valiente cites in her opposition – *Taylor v. Shutterfly, Inc.* – does not counsel against dismissal for this limited purpose.  No. 18-cv-00266-BLF, 2020 WL 1307043 (N.D. Cal. Mar. 19, 2020).  There, the defendant sought to strike class allegations because, as proposed, the class definition included injured class members.  *Id.* at *2.  The court considered the arguments on those points better addressed at class certification and as such, the arguments did not present "one of those rare circumstances" in which a motion to strike would be appropriate.  *Id.* at *4.

21

22

23

24

Here, however, Simpson raises a discrete issue – whether Valiente should conform her class definition to the applicable statutes of limitation – and Valiente appears to concede that she intends to proceed accordingly.  The Court therefore construes Simpson's motion as seeking dismissal of time-barred claims.[13]  So construed, the motion is granted with leave to amend so that

25

26

27

28

---

[13] If construed otherwise, the motion would be disfavored as this stage, as it would improperly invoke Rule 12(b)(6) as a vehicle to litigate issues better reserved for the class certification inquiry under Rule 23.  *See Sulzberg v. Happiest Minds Techs. Pvt. Ltd.*, No. 19-CV-05618-SVK, 2019 WL 6493984, at *2 (N.D. Cal. Dec. 3, 2019) ("Courts in this District have held that Rule 12(b)(6) is not a proper vehicle for dismissing class claims . . . Defendant's attacks on Plaintiff's class allegations are better made in the context of a Rule 23 motion for class certification, after

Valiente can conform her class definition to the appropriate statute of limitations period.

## IV.    CONCLUSION

For the reasons set forth above, Simpson's motion to dismiss is GRANTED IN PART AND DENIED IN PART.  Valiente shall file a first amended complaint within 21 days of this order.

**IT IS SO ORDERED.**

Dated: February 20, 2024

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

---

appropriate development of the record."); *Slovin v. Sunrun, Inc.*, No. 15-CV-05340 YGR, 2016 WL 5930631, at *2 (N.D. Cal. Oct. 12, 2016) ("While defendants' arguments may eventually prove to be convincing, defendants' motion to strike is premature given that discovery is still ongoing and no motion for class certification has been filed"); *see also Azad v. Tokio Marine HCC-Med. Ins. Servs. LLC*, No. 17-CV-00618-PJH, 2017 WL 3007040, at *8-9 (N.D. Cal. July 14, 2017) (denying the motion to strike class allegations despite the court having "doubts as to whether this case can be maintained as a class action, [as] the propriety of the class allegations are better addressed at the class certification stage").